# In the United States Court of Federal Claims

Nos. 17-163C, 17-671C

(Filed: May 19, 2023)

|  |  |
|---|---|
| **GILBERT ABALOS, et al.,** | ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

## ORDER DENYING MOTION TO COMPEL AND TO SHOW CAUSE

Plaintiffs, current and former border patrol agents employed by the United States Customs and Border Protection ("CBP"), filed this Fair Labor Standards Act case against Defendant, the United States, *more than six years ago*. Forward progress has been minimal. Indeed, the discovery period for just a small group of model plaintiffs — selected from only two out of twenty plaintiff subgroups — finally concluded on February 15, 2023. With just two weeks left remaining in that initial discovery period, Plaintiffs filed a motion to compel discovery, impose sanctions, and award attorneys' fees.

Plaintiffs' motion is the legal equivalent of launching boulders in a glass house. The Court denies the motion and orders Plaintiffs' counsel to show cause why they should not pay the government's attorneys' fees and costs.

### I. PROCEDURAL HISTORY

#### A. The Parties Agreed to Limit Discovery for this Initial Phase of the Case to Selected Model Plaintiffs within Two CBP Sectors

On February 3, 2017, Plaintiffs, Gilbert Abalos, *et al.*, filed a complaint against Defendant, the United States, alleging that CBP failed to compensate current and former border patrol agents for overtime work in accordance with the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219. ECF No. 1.

On June 6, 2017, the parties filed a joint preliminary status report ("JPSR"). ECF No. 19. Therein, the parties included a "Proposed Discovery Plan" modeled after the one in *Abad v. United States*, No. 14-444C, a similar FLSA collective action case. *Id.* at 7 (proposing a "structured, sector-by-sector approach to discovery similar to that currently being used in *Abad*"). In particular, the parties proposed as follows:

> [L]itigation would proceed sector-by-sector, moving serially through each of the 20 CBP sectors. The parties would cooperate on the selection of a *stipulated number of representative plaintiffs for each sector*, conduct written and oral discovery upon *those plaintiffs*, then assess whether any issues can be narrowed or resolved through motion practice, trial, or alternative dispute resolution.

*Id.* (emphasis added). The parties acknowledged that the government was in the process of gathering information about each of the plaintiffs "so that the plaintiffs can be divided among the 20 sectors *and representative plaintiffs can be selected*." *Id.* 7–8 (emphasis added).[1]

On September 5, 2017, the parties filed a joint status report ("JSR"), in which they indicated that they "have discussed not only following the *Abad* discovery structure, but also following *Abad*'s choice of sector locations for the first of the litigation: the Laredo and Detroit sectors." ECF No. 24 at 4 (noting that "many of the documents and most of the deposition testimony adduced from supervisors and upper management in each sector should be able to be used in both cases").

On September 22, 2017, the parties filed a joint proposed discovery schedule. ECF No. 27. In general, "the parties propose[d] an initial period of discovery in which the parties exchange payroll data for all plaintiffs, *followed by fact discovery limited to jointly selected and randomly selected plaintiffs*." *Id.* at 4 (emphasis added). The parties reiterated that discovery would "advance on a sector-by-sector basis," proceeding "with discovery in two sectors initially, Detroit and Laredo" — referred to as the "Group 1 Sectors." *Id.* at 4–5. Even within the Group 1 Sectors, the parties made clear that discovery would be limited: "The parties propose to focus on a limited set of model plaintiffs (discovery plaintiffs) in three to four stations per sector." *Id.* at 4. The term "discovery plaintiffs" is employed throughout the filing. *Id.* at 4–7.

The joint proposed discovery schedule also addressed how the parties would select discovery plaintiffs. Specifically, "[t]he parties . . . agreed to select 10 discovery plaintiffs in the Detroit Sector who are or were located in the Detroit, Gibraltar, and Marysville stations, with three discovery plaintiffs to be selected from each station, and

---

[1] At the time, this case was pending before then-Chief Judge Braden.

the tenth discovery plaintiff to be selected randomly among the stations." ECF No. 27 at 5. The parties "agreed to select 12 discovery plaintiffs in the Laredo sector." *Id.* (noting that the parties would "select[] six discovery plaintiffs from the North and South Laredo stations, three discovery plaintiffs from the Hebbronville station, and three . . . from the Zapata station").

In addition, the parties' joint proposed discovery schedule addressed "Deposition Discovery of Supervisors." ECF No. 27 at 5 (emphasis omitted). Two things are clear from this filing. First, Plaintiffs had to "produce a list of supervisors . . . to be deposed." *Id.* Second, the government agreed "that this [list] could be very long (*i.e.*, in excess of six dozen)." *Id.* at 5–6. After Plaintiffs generated their list, "the parties agree[d] to work together to identify a reasonable number of supervisors to depose." *Id.* at 6. In terms of Rule 30(b)(6) witnesses, Plaintiffs were limited to three per sector "for a total of six for the two sectors addressed in this proposed schedule." *Id.*

The parties further agreed that "[o]nce fact discovery relating to discovery plaintiffs in a sector is complete" — and following the "completion of expert discovery" — "the parties will propose a briefing schedule for dispositive motions or, if appropriate, notify the Court that the parties are ready to proceed to trial *on the claims of the discovery plaintiffs for the first group of sectors*." ECF No. 27 at 4 (emphasis added). The parties also agreed that they would then "propose a discovery schedule for the second group of sectors." *Id.*

On November 30, 2017, the Court issued a scheduling order consistent with the parties' discovery plan. ECF No. 34.[2] This order provided that the "[p]arties shall select *discovery plaintiffs* for the Group 1 Sector plaintiffs (Detroit and Laredo)" by December 28, 2017. *Id.* at 1 (emphasis added). On the very next line, the order provided that fact discovery for "Group 1 Sector plaintiffs" would close on October 31, 2018. *Id.* The phrase "Group 1 Sector plaintiffs" clearly referred to the Group 1 *discovery* plaintiffs. *Id.* After all, ordering the parties to perform fact discovery for *all* of the Group 1 plaintiffs would have rendered the selection of discovery plaintiffs pointless.

Over the course of the next several years, the parties moved, and the Court agreed, to amend the discovery schedule no less than seven times. ECF No. 79 (citing ECF Nos. 36, 38, 41, 45, 53, 56, 58). In at least one such joint motion, the parties referred to the "designated test plaintiffs." ECF No. 52 at 1. Then, on June 22, 2021, eight days before the then-deadline for the completion of fact discovery, the parties filed a motion to vacate the discovery schedule and stay the matter for settlement discussions. ECF No. 64. On June 25, 2021, this matter was randomly reassigned to the undersigned judge. ECF No. 66. And on July 13, 2021, the Court granted the parties' motion and stayed the case. A

---

[2] By this point, the case had been transferred to Judge Griggsby.

3

year later, on July 13, 2022, the parties notified the Court that their settlement negotiations were unsuccessful.  ECF No. 74.

On July 27, 2022, the parties filed a joint status report reiterating that fact discovery was "*limited to jointly selected and randomly selected individual plaintiffs*, plus a certain amount of the discovery [from and concerning] plaintiffs' supervisors."  ECF No. 76 at 2 (quoting ECF No. 24 at 4 (emphasis added) (alteration in original)).  The parties also proposed a new timeline "for completing fact discovery in Group 1," suggesting that fact discovery for the "Group 1 Sector plaintiffs" should close on March 30, 2023.  *Id.* at 3.  The parties further noted that Plaintiffs had not yet "taken the depositions of any supervisors or Rule 30(b)(6) depositions."  *Id.* at 4.  Plaintiffs added a separate statement explaining that they "intend[ed] to start limited nationwide discovery in preparation for filing Plaintiffs' motion for collective certification and for designation of representative plaintiffs."  *Id.* at 5.  The government objected to that plan, *id.*, and the Court held a status conference on August 2, 2022, ECF No. 78.

On August 4, 2022, the Court rejected Plaintiffs' attempt to pursue nationwide discovery, ordering that this case "shall continue to proceed in phases, as originally proposed by the parties, with the first phase limited to Group 1."  ECF No. 79 at 3.  The Court emphasized that "*the parties consistently agreed that this litigation would proceed sector-by-sector*," and noted that the Court had repeatedly reaffirmed this agreement.  *Id.* (emphasis in original).  In addition, the Court found that Plaintiffs had "offered no persuasive justification for altering the parties' prior agreement."  *Id.*  In sum, there was "no reason to depart from the parties' earlier agreement, which was paused only due to the joint request of the parties for exploring the possibility of settlement."  *Id.*  The Court ordered the parties to propose a new schedule, including a deadline for the "close of fact discovery for Group 1 plaintiffs."  *Id.*  Nowhere did the Court suggest it was open to, or would approve, the wholesale alteration of the parties' jointly proposed discovery plan this Court previously adopted and upon which the operative discovery schedules have always been based.

On August 17, 2022, pursuant to the Court's order, the parties submitted a joint status report.  ECF No. 80 at 1.  Later that same day, the Court issued a scheduling order consistent with the parties' proposal, setting the close of fact discovery for the "Group 1 plaintiffs" for February 15, 2023.  ECF No. 81 at 1.

**B.      The Discovery Dispute**

On February 1, 2023, Plaintiffs filed a motion to compel discovery, impose monetary sanctions, and award attorneys' fees pursuant to Rules 34 and 37 of the Rules

4

of the United States Court of Federal Claims ("RCFC").  ECF No. 86 ("Pl. Mot.").[3]  Plaintiffs' motion is limited to a single request for production of documents ("RFPD").  Pl. Mot. at 10.[4]  That discovery request, RFPD 24, seeks "[a]ll emails sent by and/or to Plaintiffs' supervisors that evidence, refer, or relate to [administratively uncontrollable overtime], scheduling, or hours worked." *Id.*  Plaintiffs' primary complaint appears to be that "Defendant has produced a small fraction of the requested emails from a small sampling of Group 1 Plaintiffs."  Pl. Mot. at 12.  Plaintiffs further assert that "Defendant here has failed to produce all responsive documents and refuses to agree to do so."  *Id.*  Although Plaintiffs quote at length the government's objections and Plaintiffs' responses with respect to RFPD 24, Plaintiffs' motion is all but devoid of any specificity regarding the relief they seek from this Court.  *Id.*  As best the Court can tell, Plaintiffs' central criticism of the government's production relates to email communications between CBP "supervisors and management employees" who made and enforced the alleged unlawful compensation decisions that "lie at the heart of the case."  *Id.* at 16.  Plaintiffs also reference unspecified "position descriptions, training guides, memoranda, and other policy documents."  *Id.* at 18.

Defendant filed its response to Plaintiffs' motion on February 14, 2023.  ECF No. 87 ("Def. Resp.").  Plaintiffs filed their reply brief on February 21, 2023, ECF. No. 88 ("Pl. Rep."), and, on February 23, 2023, the government moved for leave to file a sur-reply, which the Court granted.  ECF No. 89 ("Def. Rep.").

On May 3, 2023, the Court held oral argument on Plaintiffs' motion.  ECF No. 95; ECF No. 97 (Transcript ("Tr.")).

## II.     MOTIONS TO COMPEL DISCOVERY PURSUANT TO RCFC 37

The Rules of this Court permit parties to "move for an order compelling disclosure or discovery" under a range of circumstances.  RCFC 37(a)(1).  Among other things, a party can move to compel production of a required disclosure, RCFC 37(a)(3)(A), or to compel production of a specific discovery response, like "an answer, designation, production, or inspection," RCFC 37(a)(3)(B).  *See, e.g., New Orleans Reg'l Physician Hosp. Org., Inc. v. United States*, 122 Fed. Cl. 807, 820 (2015) (compelling a party "to redo its

---

[3] Because Plaintiffs filed a memorandum in support of their motion within the same ECF filing, this order utilizes the ECF pagination electronically stamped in the header of the document.  Plaintiffs certified that they conferred with the government before seeking the Court's intervention, in accordance with RCFC 37(a)(1).  Pl. Mot. at 2.

[4] Plaintiffs' motion contains two exceedingly brief paragraphs regarding RFPDs 2–3 and 8–23, but Plaintiffs do not pursue those items here, expressly indicating that they merely "include[d] the above requests in this Motion to ensure production . . . and preserve their right to these documents in the event Defendant fails to comply with the [discovery] deadline."  Pl. Mot. at 9–10.

previous searches" for responsive documents); *3rd Eye Surveillance, LLC v. United States*, 158 Fed. Cl. 216, 232 (2022) (ordering that a party "clarify [its] answers" to a series of RFPDs). Pursuant to RCFC 37(a)(5), "a prevailing party in a motion to compel may be entitled to reasonable expenses." *CENTECH Grp., Inc. v. United States*, 2021 WL 3027158, at *4 (Fed. Cl. July 16, 2021).

This Court exercises broad discretion regarding "the scope and conduct of discovery." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984); *see also Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc) ("A trial court 'has wide discretion in setting the limits of discovery.'" (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991))). That broad discretion extends to resolving motions to compel. *See New Orleans Reg'l Physician Hosp. Org.*, 122 Fed. Cl. at 815. When resolving such motions, "'court[s] must balance potentially conflicting goals' with the understanding that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" *3rd Eye Surveillance*, 158 Fed. Cl. at 223 (second alteration in original) (first quoting *Petro-Hunt, LLC v. United States*, 114 Fed. Cl. 143, 144 (2013); and then quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). "The decision whether to impose discovery sanctions rests within the sound discretion of the trial court." *AG–Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 79 (2008) (quoting *Ingalls Shipbuilding, Inc. v. United States*, 857 F.2d 1448, 1450 (Fed. Cir. 1988)).

### III. PLAINTIFFS' MOTION IS DENIED

The government broadly opposes Plaintiffs' motion, arguing that it proceeds from an erroneous premise about the scope of discovery to which the parties agreed and that the Court adopted in this case:

> Due to the vast size and scope of the case, the parties agreed to first conduct discovery on two of CBP's 20 sectors, as part of what the parties have colloquially referred to as their sector-by-sector litigation plan. From the time the parties adopted this plan and continuing through the Court's most recent discovery order, the sector-by-sector plan has been limited in relevant part to discovery on a sampling of test plaintiffs within this first discovery group. At present, the parties are attempting to close discovery as to this first phase, which involves 21 test plaintiffs from among 197 plaintiffs employed within these first two sectors. The discovery dispute that plaintiffs now raise centers on their insistence that they are entitled to a broad array of emails covering four years from about 500 different individuals that work within these sectors.

Def. Resp. at 4.

Plaintiffs, in reply, all but accuse the government of lying:

> Since the inception of discovery in this case, the plan has been to proceed sector by sector. Now, *for the very first time*, Defendant, the United States, holds out that it was always the Parties' agreement to conduct discovery for only a test set of plaintiffs who represent about ten percent of the Group 1 discovery population. As evidenced by Defendant's own actions, this last-minute attempt to reframe the scope of pending discovery is *at best disingenuous*, and is, simply, not the course of action the Court endorsed.

Pl. Rep. at 1 (emphasis added).

Essentially, Plaintiffs argue that the Court's August 4, 2022, and August 17, 2022, orders — in using the phrase "Group 1 plaintiffs" — undid the parties' discovery agreement, reversed course on the initial scheduling order, and extended discovery, *sub silentio*, to *all 196* Group 1 plaintiffs. Pl. Mot. at 1 (referencing ECF Nos. 79, 81). Thus, according to Plaintiffs, the government must produce emails for all 196 Group 1 plaintiffs and their supervisors. *Id.* Plaintiffs contend that the government's interpretation of RFPD 24 — that the government need only produce documents concerning the 21 discovery plaintiffs — is "in clear contravention" of the Court's orders. *Id.*

Having now reviewed all (or nearly all) of the joint status reports and scheduling orders in this case, the Court is struck by the sheer audacity of Plaintiffs' argument. *The record is crystal clear that the government's view of the scope of discovery is correct.* Indeed, even Plaintiffs concede that the "*early* discovery plan . . . called for *initial* discovery to be completed" using only the 21 agreed-upon discovery plaintiffs. Pl. Mot. at 3 (emphasis added). Although the premise of Plaintiffs' pending motion is that the initial discovery plan has been vacated, "[Plaintiffs] provide no explanation as to why the agreement no longer governs, nor do they claim that the underlying calculus for that agreement has changed." Def. Resp. at 11. To make matters worse, Plaintiffs' counsel of record acknowledges that "[t]his discovery plan was *finalized* on September 22, 2017[,] in a joint status report." Pl. Mot., Ex. 1, ¶ 8 (Decl. of Danielle L. Perry) (emphasis added).

The record does not give Plaintiffs any wiggle room. Rather, *the parties consistently and repeatedly agreed that fact discovery would be limited to a subset of model plaintiffs. See, e.g.*, ECF Nos. 19, 27, 34, 76. Most critically, the parties' finalized discovery plan explained that fact discovery would "*focus on a limited set of model plaintiffs (discovery plaintiffs)* in three to four stations per sector." ECF No. 27 at 4. The parties made this choice for the prudent reason that performing fact discovery for more than 1,800 plaintiffs would be a

"potentially unwieldy task" — an understatement to say the least. Def. Mot. at 3, 11 (citing ECF No. 24 at 3–4). Accordingly, in the context of the discovery plan in this case, the phrases "Group 1 plaintiffs" and "Group 1 Sector plaintiffs" *have always referred only to the 21 discovery plaintiffs*. ECF Nos. 34, 76, 79, 80, 81. There is no evidence — nor would it be reasonable to believe — that the government agreed to produce emails for 175 additional plaintiffs, not to mention all of their supervisors, in just six months. Nor, for that matter, did the Court order the government to perform such a herculean task. ECF No. 81 at 1. If Plaintiffs wanted to change that aspect of the joint discovery plan, Plaintiffs could have filed a motion to do so, just as they did when they sought to alter the plan's sector-by-sector approach.

If the proper, limited discovery applicable in this stage of this case were not obvious from the parties' joint discovery plan, it should have been obvious from this Court's August 4, 2022, order. ECF No. 79. There, the Court was adamant that discovery would proceed according to the parties' original discovery plan, ordering as follows: "[T]he Court sees no reason to depart from the parties' earlier agreement, which was paused only due to the joint request of the parties for the purpose of exploring the possibility of settlement. This case shall continue to proceed in phases, as originally proposed by the parties[.]" *Id.* at 3. Plaintiffs point to the Court's having ordered that discovery would continue "sector-by-sector," Pl. Rep. at 3-4, but no one could reasonably conclude that the Court somehow vacated the other limitations in the parties' joint discovery plan that this Court previously adopted. ECF No. 79 at 3. The point of the Court's references to "sector-by-sector" discovery and "Group 1 plaintiffs," was to reject Plaintiffs' request that discovery "should instead be expanded to cover all the CBP sectors at issue" — the whole context of that order. *Id.* at 2. Again, if Plaintiffs wanted relief from the parties' joint discovery agreement this Court adopted, Plaintiffs knew how to file such a motion.

Accordingly, Plaintiffs' motion is **DENIED**. To the extent Plaintiffs complain about documents related to the model discovery plaintiffs and/or their supervisors, only one issue remains, as discussed *infra*.

Likewise, Plaintiffs' request for monetary sanctions and attorneys' fees is **DENIED**. Moreover, after further review of Plaintiffs' briefs and the previous filings and orders in this case, both Plaintiffs' counsel of record and Mr. Alan Lescht are ordered to **SHOW CAUSE** why, pursuant to RCFC 37, they should not pay the government's attorneys' fees and costs for time spent opposing Plaintiffs' motion.[5] Plaintiffs' counsel

---

[5] The Court notes that *both* Ms. Perry, who is counsel of record, *and* Mr. Lescht signed Plaintiffs' filings at issue, designating themselves as "Counsel for Plaintiffs, Gilbert Abalos, et al." *See* Pl. Mot. at 21; Pl. Rep. at 10–11. Going forward, however, Mr. Lescht "*must* be designated 'of counsel'" as "[a] party may have only one attorney of record in a case at any one time[.]" RCFC 83.1(c)(1) (emphasis added); *see also* RCFC 83.1(c)(2) ("All filings must be signed in the attorney

shall *with specificity* — *i.e.*, using quoted language — point the Court to the precise *factual* bases for Plaintiffs' assertions that: (1) it was "[not] always the Parties' agreement to conduct discovery for only a test set of plaintiffs who represent about ten percent of the Group 1 discovery population," Pl. Rep. at 1; (2) "Plaintiffs' motion seeks nothing beyond what the Parties have agreed [to] all along[,]" *id.* at 3 (asserting that it was "not so" that "the Parties' 'longstanding' agreement was to proceed on a piece-of-sector-by-piece-of-sector basis"); and (3) "[t]he Parties and the Court crafted a big discovery plan . . . [that was] to proceed sector by sector, *starting with discovery for the 197 plaintiffs in Group 1,* who worked in the Detroit and Laredo sectors[,]" Pl. Rep. at 10 (emphasis added). Finally, although it appears that the government's current counsel of record may have been unfamiliar with the parties' agreement regarding the scope of discovery, *see* Tr. at 36:1–14, Plaintiffs' counsel shall further address whether Plaintiffs' motion and reply brief are consistent with their duty of candor *to this Court*.

### IV.   THE PARTIES MUST MEET AND CONFER REGARDING SUPERVISORS

During oral argument, Plaintiffs' counsel agreed that the only outstanding issue is the number of Group 1 supervisors subject to discovery (for which the government owes Plaintiffs certain documents). Tr. at 16:5–9. In that regard, Plaintiffs seek emails from *all* Group 1 supervisors. Tr. at 14:23–25, 15:10–11. Plaintiffs' counsel estimated that this cohort consists of approximately 200 government employees, Tr. at 16:25, while Defendant's counsel estimated 350 such employees, Tr. at 17:16. *See* Pl. Mot., Ex. 2 at 11–19 (listing approximately 350 Group 1 supervisors). Either way, this request far exceeds the needs of this case.

Defendant, on the other hand, concedes that it has only "produce[d] emails from 10 [CBP] supervisors from Detroit and Laredo," Def. Resp. at 14 n.4. Defendant contends that its decision to limit production to 10 supervisors is "consistent with [its] obligations under the parties' discovery agreement." Def. Rep. at 2.

The problem for the government is that the parties apparently never agreed to a definitive number of supervisors. The parties' discovery plan speaks to this issue, but only in the most general terms and, even then, only in the context of depositions:

> *Deposition Discovery of Supervisors*. Based upon experience in other cases, discovery from the discovery plaintiffs will produce a list of supervisors who will need to be deposed. The length of this list will depend heavily upon the ability of the deposition plaintiffs to precisely identify any supervisors

---

of record's name."); ECF No. 70 (order striking Plaintiffs' notice of appearance). Given that Ms. Perry and Mr. Lescht did not comply with RCFC 83.1, the Court finds it appropriate for both counsels to respond to this show cause order.

> who might have information pertaining to the allegations in the complaint, and defendant's experience in other related cases indicates that this list could be very long (*i.e.*, in excess of six dozen).  Once the list is compiled, the parties agree to work together to identify a reasonable number of supervisors to depose.

ECF No. 27 at 5–6.  Similarly, an earlier JSR refers to "fact discovery limited to jointly selected and randomly selected individual plaintiffs, *plus a certain amount of the discovery plaintiffs' supervisors*."  ECF No. 24 at 4 (emphasis added).

The Court concludes that a "certain amount of the discovery plaintiffs' supervisors" clearly means less than the entire universe of supervisors.  At the same time, considering the size of that universe, limiting discovery to only 10 supervisors is insufficient, especially because that represents less than *half* the number of discovery plaintiffs.

Accordingly, the parties shall meet and confer to decide on a reasonable number of supervisors for whom the government shall produce documents.  In having those discussions, Plaintiffs should keep in mind that the discovery plan at least puts some emphasis "upon the ability of the deposition plaintiffs to precisely identify any supervisors who might have information pertaining to the allegations in the complaint."  ECF No. 27 at 5–6.  In addition, the Court is sympathetic to the fact that the government tried to engage Plaintiffs' counsel regarding an agreed-upon list of supervisors, but had limited success in doing so.  Tr. at 20:22–25, 21:1–3; Pl. Mot., Ex. 2 at 4–5.

On the other hand, the government should keep in mind that the Court is unimpressed — and, for now, unmoved by — the government's description of the limitations and difficulties the Department of Justice and the CBP face in terms of their collective e-discovery capabilities.  The year is 2023, not 2003.  *See CCA Recordings 2255 Litig. v. United States*, 2020 WL 4284222, at *8 (D. Kan. July 27, 2020) (commenting about a government e-discovery estimate that "an effective competitive bidding process with vendors in what the court knows is a very robust ESI marketplace might bring the price tag down").  The Court hopes the parties can avoid a trip down the e-discovery rabbit hole.  *See* RCFC 53; *Cannata v. Wyndham Worldwide Corp.*, 2012 WL 528224, at *4 (D. Nev. Feb. 17, 2012) ("This court finds that based on the unsuccessful efforts of the parties to work together with regard to the production of [electronically stored information], appointing a Special Master to oversee this process is appropriate."); *Guy v. Absopure Water Co.*, 2021 WL 5511722, at *2 (E.D. Mich. July 13, 2021) ("If the parties are unable to develop a proposed ESI protocol together, the Court will be inclined to appoint a special master — paid for by the parties — to supervise ESI matters.").

In the meantime, the Court **DENIES**, without prejudice, Plaintiffs' motion to compel regarding supervisors, as that issue is not yet ripe for resolution. Depending on the outcome of the parties' discussions, Plaintiffs may seek leave to refile their motion with respect to this issue only.

## V.     CONCLUSION

On or before **June 18, 2023**, Plaintiffs' counsel who signed the filings at issue shall file their response to the show cause order, *supra*.[6] That response brief shall be in 12 point, Times New Roman font, double-spaced; it shall not exceed 10 pages and shall not contain footnotes.

Also, on or before **June 18, 2023**, the parties shall file a joint status report regarding whether they have reached a compromise on the number of supervisors subject to document discovery at this stage of the case. If the parties reach an agreement, the Court will reopen fact discovery for the limited purpose of completing document production for those supervisors. The parties shall address the parameters of that discovery, and an associated timetable, in their joint status report. If the parties are unable to reach an agreement, the Court will hold further proceedings, which may include permitting Plaintiffs to renew their motion to compel.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge

---

[6] If Ms. Perry and Mr. Lescht seek to file separate responses, they may do so.